# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

## WESTERN DIVISION

**Case No. 20-692**

| | |
|---|---|
| ALDO DE LEON RESENDIZ, individually and on behalf of all others similarly situated | **CLASS ACTION COMPLAINT** |
| *Plaintiff,* | **JURY TRIAL DEMANDED** |
| v. | |
| EXXONMOBIL CORPORATION, | |
| *Defendant.* | |

## INTRODUCTION

1. ExxonMobil Corporation ("ExxonMobil") denies employment opportunities on the basis of alienage to entire categories of individuals authorized to work in the United States. Specifically, ExxonMobil denies employment to individuals who have temporary work authorization, including those who have acquired work authorization through the DACA (Deferred Action for Childhood Arrivals) policy. Plaintiff Aldo de Leon Resendiz, individually and as the class representative on behalf of all others similarly situated, brings this suit against ExxonMobil to challenge this facially discriminatory policy and practice, which constitutes intentional discrimination on the basis of alienage and is unlawful under the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981.

1

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a), as well as under 42 U.S.C. §§ 1983 and 1988.

3.  Venue is proper in the Eastern District of North Carolina under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

*Plaintiff*

4.  Plaintiff Aldo De Leon Resendiz ("Plaintiff De Leon" or "De Leon") is a 22-year-old college student at North Carolina State University, seeking a Bachelor's degree in Chemical Engineering and Paper Science.

5.  Plaintiff De Leon is not a citizen of the United States. He arrived in the United States in 2006, at the age of 8. In 2012, the U.S. Department of Homeland Security granted Plaintiff De Leon deferred action and authorization to work in the United States through the Deferred Action for Childhood Arrivals (DACA) initiative. Plaintiff had work authorization when he applied to and was ultimately denied the position of Chemical Engineer Intern at ExxonMobil. He continues to have work authorization and deferred action. Plaintiff De Leon does not require a sponsor to be authorized to work in the United States.

*Defendant*

6.  Defendant ExxonMobil is an American multinational energy corporation headquartered in Irving, Texas. Defendant ExxonMobil, by soliciting, conducting, and transacting business in North Carolina, engages in continuous, permanent and substantial activity within the state.

## FACTUAL ALLEGATIONS

7.      Defendant ExxonMobil intentionally discriminates against noncitizen applicants for employment in the United States on the basis of alienage.

8.      Plaintiff Aldo De Leon is a top student majoring in Chemical Engineering and Paper Science at North Carolina State University, where he is earning a 4.0 GPA, and a member of the Goodnight Scholars Program, a program for the top science and engineering students at North Carolina State University.

9.      In or around September 2018, Defendant ExxonMobil representatives visited North Carolina State University to present at an event sponsored by the Society of Hispanic Professional Engineers, as well as to recruit interns from the Goodnight Scholars program. At this event, recruiters spoke with Plaintiff De Leon and encouraged him to apply for a chemical engineer internship with Defendant ExxonMobil.

10.     On September 15, 2018, Plaintiff De Leon submitted an online application to Defendant ExxonMobil for an internship to start in the summer of 2019.

11.     On his application, Plaintiff De Leon answered that he was authorized to work in the United States and that he has been a citizen of Mexico since the year of his birth, 1998. Plaintiff De Leon answered that he would not need future company sponsorship for a visa or work authorization. Plaintiff De Leon also mistakenly marked that his work authorization was permanent and not temporary.

12.     On September 18, 2018, an ExxonMobil representative interviewed Plaintiff De Leon for an internship. The representative and Plaintiff De Leon discussed Plaintiff's resume and accomplishments. They did not discuss Plaintiff's immigration status or work authorization or

3

that Defendant ExxonMobil requires that its interns possess a permanent right to work in the United States.

13.     On or around September 28, 2018, Plaintiff De Leon received an offer for a spring 2019 internship with another company.

14.     On or around October 8, 2018, Plaintiff De Leon accepted an offer from another company for a 2019 summer internship.

15.     On October 12, 2018, Plaintiff De Leon received an email signed by Victoria Burnhauser, a Recruiting Operations Analyst for Defendant ExxonMobil, with an attached offer letter for a 2019 summer internship at Defendant ExxonMobil's Baton Rouge facility.

16.     On October 15, 2018, Plaintiff De Leon and Defendant ExxonMobil agreed that Plaintiff De Leon could begin his internship in January 2019 so that he would not have to renege on the summer 2019 internship with another company that he had already accepted.

17.     After Plaintiff De Leon accepted a 2019 spring internship with Defendant ExxonMobil, he declined the internship offer from another company. That internship would have paid Plaintiff De Leon a $1,993 semi-monthly stipend, with an additional housing allowance of $900 per month.

18.     Defendant ExxonMobil offered Plaintiff De Leon a starting salary of $83,000, relocation benefits, and noted that the "offer is contingent upon the verified, satisfactory completion of requirements outlined in the Conditions of Employment." Clicking on the link "Conditions of Employment" in the offer letter leads to a page on Defendant ExxonMobil's website. This page states: "This employment offer is contingent upon satisfaction of [] requirements that we will verify upon your acceptance," including maintaining satisfactory academic performance, completion of a medical evaluation, drug test, and background check,

and that "the work eligibility requirements in the employment application include original documentation to support your status." The webpage continues: "When you accept our offer you will be asked to provide a legible copy of <u>one of the following documents</u> showing your status as a "Protected Individual" as defined by federal law." The webpage requests documents that establish that an intern is a U.S. Citizen or National, Permanent Resident, Temporary Resident, Refugee, and Asylee.

19.     Defendant ExxonMobil then required Plaintiff De Leon to complete a second application specifically for Defendant ExxonMobil's Baton Rouge facility. On October 29, 2018, Plaintiff De Leon submitted the Baton Rogue application. On this application, Plaintiff De Leon again marked that he was legally authorized to work, he was a citizen of Mexico, and he would not need future company sponsorship for a visa or work authorization.

20.     In or around November 2018, Defendant ExxonMobil sent De Leon a $3,000 moving allowance.

21.     On November 14, 2018, Burnhauser emailed Plaintiff De Leon to remind him to upload documents that would demonstrate his eligibility to work in the United States.

22.      On or around November 23, 2018, Plaintiff De Leon submitted copies of his work authorization document and social security card on Defendant ExxonMobil's CareerConnect Portal. Plaintiff De Leon also sent an email to Defendant ExxonMobil that confirmed that he had uploaded the required documentation.

23.     On or around December 6, 2018, Latisha Thomas, a representative from Defendant ExxonMobil's Baton Rouge Human Resources office, emailed Plaintiff De Leon to inform him that Defendant ExxonMobil required that he obtain a Transportation Worker Identification Credential ("TWIC") card. The email stated that the "U.S. Department of

Homeland Security has notified ExxonMobil that Transportation Worker Identification Credential (TWIC) cards are required to enter" the Baton Rouge Refinery and Baton Rouge Chemical Plant. The email included instructions to complete the TWIC card application and indicated that Plaintiff De Leon's employment could begin upon completion of the requirements in the offer letter and receipt of the TWIC card.

24.     Plaintiff De Leon promptly started the online application for a TWIC card. Upon realizing that his employment authorization document did not present itself as a valid option for TWIC eligibility, Plaintiff De Leon asked three separate ExxonMobil representatives for assistance.

25.     On or around December 12, 2018, Plaintiff De Leon called a Human Resources representative at Defendant ExxonMobil's Baton Rouge facility to discuss his TWIC card application. During this conversation, the representative instructed Plaintiff De Leon to change his response to the question "Do you now or will you in the future require company sponsorship for a visa or employment authorization?" from "No" to "Yes". Plaintiff De Leon believes that the representative advised him to make this change in hopes that it would facilitate Plaintiff De Leon's acquisition of a TWIC card, either through sponsorship by Defendant ExxonMobil or otherwise. After making this change, Plaintiff De Leon re-submitted his application. The representative and Plaintiff De Leon did not discuss whether Plaintiff De Leon had temporary or permanent work authorization.

26.     On or around December 26, 2018, Plaintiff De Leon received a call from a Defendant ExxonMobil Human Resources representative who informed him that Defendant ExxonMobil was rescinding its internship offer.

27.     On or around December 31, 2018, Plaintiff De Leon received a letter from Rosendo Cruz, a U.S. Recruiting Supervisor for Defendant ExxonMobil that rescinded the internship offer. The letter stated in part: "As described in your offer letter, a prerequisite of employment for the position you are seeking is that you have the permanent or indefinite right to work in the U.S. (i.e. you are a protected individual under 8 USC 1324b – you are a US citizen, US National, US Permanent Resident, US Conditional Permanent Resident, Temporary Resident . . ., Asylee, or Refugee.) We now understand based on your application modified after receiving our offer that you do not meet this eligibility requirement." Defendant ExxonMobil did not offer Plaintiff De Leon an internship at a jobsite that did not require a TWIC card.

28.     Due to the short window of time between the rescission letter and the start of his Spring semester, Plaintiff De Leon was unable to obtain an internship to replace the internship that Defendant ExxonMobil rescinded. Plaintiff De Leon had moved out of his college housing in anticipation of his move to Baton Rouge and had to hastily secure expensive short-term housing near campus.

29.     In or around September 2019, a Defendant ExxonMobil representative contacted Plaintiff De Leon to discuss a potential internship for Summer 2020. This representative conveyed that Defendant ExxonMobil could place him at a location that did not require a TWIC card.

30.     Soon thereafter, Plaintiff De Leon spoke with a different Defendant ExxonMobil representative who provided her personal email for Plaintiff De Leon to further discuss potential internship opportunities. Soon thereafter, the representative called Plaintiff De Leon to inform him that Defendant ExxonMobil could not offer him an internship.

31.    On or around June 30, 2020, Plaintiff De Leon received a letter from Defendant ExxonMobil that requested that he return the $3,000 moving allowance that the company had sent him in October 2018.

32.    In or around October 2020, a Defendant ExxonMobil representative verbally confirmed that the company would not seek the return of the moving allowance.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff De Leon brings this action on his own behalf and all other persons similarly situated, under Federal Rule of Civil Procedure 23.

34.    Plaintiff De Leon brings class allegations on behalf of himself and a class (the "Class") defined as follows: All noncitizens who are within the jurisdiction of the United States and authorized to work in the United States, who were denied employment or internships with Defendant ExxonMobil, or who were deterred from applying, under the company's policies and/or practices on the basis of alienage between December 26, 2018 and the date of judgment in this action.

35.    Plaintiff De Leon reserves the right to amend the Class and any potential subclass definitions if further investigation and discovery indicate that the Class and potential subclass definitions should be narrowed, expanded, or otherwise modified. Excluded from the Class and potential subclass are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

36.    Plaintiff De Leon is a member of the Class.

37.    Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. One of the largest companies in the world, Defendant ExxonMobil has facilities throughout the country and tens of thousands of employees. As of

June 30, 2020, there were around 645,000 active DACA recipients.[1] There are thousands of individuals who, despite having work authorization, do not meet Defendant ExxonMobil's requirements for employment. Plaintiff De Leon does not know the precise number of class members, because this information is within the possession of Defendant ExxonMobil or other third parties.

38.     Questions of law and fact are common to the Class, and these questions predominate over any individual questions of law and fact. Questions of law and fact in common among the Class include, among others: 1) whether Defendant ExxonMobil's policy or practice is to reject job applicants who are authorized to work in the United States because they are not United States citizens and because they do not possess an immigration status acceptable to Defendant ExxonMobil; 2) whether Defendant ExxonMobil's policy as described above discriminatorily deprives Plaintiff De Leon and members of the Class the right to contract for work in violation of 42 U.S.C. § 1981; 3) whether Plaintiff De Leon and the Class suffered harm by reason of Defendant ExxonMobil's unlawful policy; 4) whether Plaintiff De Leon and the Class are entitled to back-pay relief; 5) whether Plaintiff De Leon and the class are entitled to compensatory damages; 6) whether equitable and injunctive relief for the Class is warranted; and 7) the scope of a resulting permanent injunction.

39.     Plaintiff De Leon's claims are also typical of the claims of the Class because: 1) Plaintiff De Leon was within the jurisdiction of the United States and not a United States citizen; 2) Plaintiff De Leon was authorized to work in the United States; 3) Plaintiff De Leon applied for a position at Defendant ExxonMobil; and 4) Defendant ExxonMobil denied Plaintiff De Leon

---

[1] U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, Approximate DACA Recipients as of June 30, 2020, *available at*
https://www.uscis.gov/sites/default/files/document/reports/DACA_Population_Receipts_since_Injunction_Jun_30_2020.pdf.

employment because of alienage. These claims are substantially shared by each and every class member. All of the claims arise from the same course of conduct of Defendant ExxonMobil, and the relief sought is common.

40.     Plaintiff De Leon will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff De Leon has no conflict with any class member. Plaintiff De Leon is committed to the goal of altering Defendant ExxonMobil's hiring policies and practices to end discrimination against Plaintiff De Leon and those who are similarly situated by virtue of their non-citizenship despite legal capacity to work in the United States.

41.     Plaintiff De Leon has retained counsel competent and experienced in complex employment discrimination class actions.

42.     The precise number of individuals affected by Defendant ExxonMobil's unlawful policy and practice is ascertainable through Defendant ExxonMobil's records and other third-party records, and therefore the proposed class is ascertainable.

43.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant ExxonMobil acted and/or refused to act on grounds that are generally applicable to the Class, which makes declaratory and injunctive relief appropriate with respect to Plaintiff De Leon and the Class as a whole. Defendant ExxonMobil has refused to hire noncitizens ostensibly because they are not citizens or are noncitizens without an immigration status acceptable to Defendant ExxonMobil, despite their possession of valid work authorization. Plaintiff De Leon and Class members are entitled to injunctive relief to end Defendant ExxonMobil's common, uniform, unfair, and discriminatory policy and/or practice.

44.     Class certification is also appropriate under Fed. R. Civ. Pr. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members of the Class.

45.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable. Class members have been damaged and are entitled to recovery as a result of Defendant ExxonMobil's common, uniform, and discriminatory policy and/or practice. Damages are capable of measurement on a class-wide basis and will be calculated in part on the wages lost due to Defendant ExxonMobil's unlawful policy and/or practice. Plaintiff De Leon and the Class will rely on common evidence to resolve their legal and factual questions. There are no pending actions raising similar claims. The proposed representative for the class is a North Carolina resident. Defendant ExxonMobil engages in continuous, permanent, and substantial activity in North Carolina. There will be no undue difficulty in the management of this litigation as a class action.

46.     This class action may be maintained under Federal Rule of Civil Procedure 23(b) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant ExxonMobil. Defendant ExxonMobil also has acted or failed to act on grounds that generally apply to all class members, necessitating the declaratory and injunctive relief Plaintiff De Leon seeks. In addition, questions of law and fact common to class members predominate over questions affecting only individual class members. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because, among other things, a class action would concentrate a

multiplicity of individual actions, which share common facts and legal disputes, in a single forum.

**FIRST CLAIM**

**Alienage Discrimination (42 U.S.C. § 1981)**

47.     Plaintiff De Leon re-alleges and incorporates by reference the allegations set forth in all prior paragraphs of this Complaint.

48.     Plaintiff De Leon brings this claim on his own behalf and on behalf of the Class.

49.     Plaintiff De Leon is a person within the jurisdiction of the United States.

50.     Plaintiff De Leon is not a citizen of the United States.

51.     In 2012, Plaintiff De Leon applied for and received DACA; he successfully renewed his DACA grant in 2014, 2016, and 2018.  As the result of receiving DACA, Plaintiff De Leon has federal work authorization, and has an employment authorization document.

52.     Defendant ExxonMobil intentionally discriminated against Plaintiff De Leon and the Class on the basis of alienage by denying them opportunities to contract to work and by deterring them from opportunities to contract because they are noncitizens, despite their legal authorization to work in the United States.

53.     Defendant ExxonMobil's intentional discrimination against Plaintiff De Leon and the Class interfered with their right to make and enforce employment contracts.

54.     Defendant ExxonMobil's facially discriminatory policies and/or practices of denying work opportunities to Plaintiff De Leon and the Class based on their alienage, despite their legal authorization to work in the United States, has harmed Plaintiff De Leon and the Class and constitutes unlawful alienage discrimination in violation of 42 U.S.C. § 1981.

12

55.     Defendant ExxonMobil's conduct caused Plaintiff De Leon and the Class substantial losses in earnings and other work benefits.

56.     Plaintiff De Leon and the Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, and the injunctive relief sought in this action is the only means to secure complete and adequate relief. Plaintiff De Leon and the Class now suffers, and will continue to suffer, irreparable injury from Defendant ExxonMobil's discriminatory acts and omissions.

## DEMAND FOR JURY TRIAL

57.     Under Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial for all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff De Leon and the Class pray for relief as follows:

i.      Certification of the case as a class action on behalf of the proposed Class;

ii.     Designation of Plaintiff Aldo De Leon as a Representative on behalf of the Class;

iii.    A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. § 1981;

iv.     A preliminary and permanent injunction against Defendant ExxonMobil Corporation and its officers, agents, successors, employees, representatives, and any and all persons' action in concert with them, to restrain them from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

v.      Back pay (including interest and benefits) for Plaintiff and Class members;

vi.     All damages sustained as a result of Defendant ExxonMobil's conduct, including damages for emotional distress, according to proof;

13

vii.     Costs incurred in this case, including reasonable attorney's fees to the extent allowable by law;

viii.     Pre-judgment and post-judgment interest, as provided by law; and

ix.     Such other and further legal and equitable relief as this Court deems, necessary, just, and proper.


Dated: December 24, 2020


Respectfully submitted,


/s/ William G. Simpson, Jr.

William G. Simpson, Jr.
Tin Fulton Walker & Owen, PLLC
1526 E. Franklin St., Suite 102
Chapel Hill NC 27514
(919) 240-7089 (phone)
(833) 666-9458 (fax)
wsimpson@tinfulton.com
N.C. Bar No. 13706
Attorney for Plaintiff

Thomas A. Saenz*
Belinda Escobosa Helzer*
Andres Holguin-Flores*
Deylin Thrift-Viveros*
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
213-629-2512
tsaenz@maldef.org
bescobosa@maldef.org
aholguin-flores@maldef.org
dthrift-viveros@maldef.org
Attorneys for Plaintiff
*Special Appearance Attorneys

14