IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CV-00692-M

| | | |
|---|---|---|
| ALDO DE LEON RESENDIZ, individually and on behalf of all others similarly situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : | ORDER |
| EXXON MOBIL CORPORATION, | : : | |
| Defendant. | : : | |

This matter comes before the court on Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [DE 14]. In this action, Plaintiff alleges that Defendant discriminated against him based on his alienage in violation of 42 U.S.C. § 1981 when it rescinded an offer for Plaintiff to work as an intern at Defendant's Baton Rouge facility. Defendant seeks dismissal of the action arguing that the Complaint is deficient in several respects; Plaintiff disagrees. The court finds that, taking his allegations as true, Plaintiff fails to state a plausible claim under Section 1981 that but for his status as a noncitizen, Defendant would not have rescinded its internship offer. Accordingly, Defendant's motion is granted.

**I.   Background**

  A.  Plaintiff's Factual Allegations

The following are relevant factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in

the operative Complaint (DE 1), which the court must accept as true at this stage of the proceedings pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff is not a citizen of the United States. He arrived in the United States in 2006 at the age of eight. In 2012, the U.S. Department of Homeland Security granted Plaintiff deferred action and authorization to work in the United States through the Deferred Action for Childhood Arrivals ("DACA") initiative. He continues to have work authorization and deferred action and does not require a sponsor to be authorized to work in the United States.

Currently, Plaintiff is a student at North Carolina State University pursuing a major in Chemical Engineering and Paper Science. Plaintiff has earned a 4.0 grade point average and is a member of the Goodnight Scholars Program, which includes the university's top science and engineering students.

In approximately September 2018, Defendant's representatives visited North Carolina State University to present at an event sponsored by the Society of Hispanic Professional Engineers and to recruit interns from the Goodnight Scholars program. At the event, recruiters encouraged Plaintiff to apply for a chemical engineer internship with the Defendant. Plaintiff submitted an application on September 15, 2018, for a summer 2019 internship with Defendant. On his application, Plaintiff noted that he was authorized to work in the United States and has been a citizen of Mexico since the year of his birth, 1998. Plaintiff also answered that he would not need future company sponsorship for a visa or work authorization. Plaintiff also mistakenly noted that his work authorization was permanent and not temporary. On September 18, 2018, an ExxonMobil representative interviewed Plaintiff for an internship. The representative and Plaintiff discussed Plaintiff's resume and accomplishments but did not discuss Plaintiff's immigration status or work authorization.

On or about September 28, 2018, Plaintiff received an offer for a spring 2019 internship with another company and on or about October 8, 2018, Plaintiff accepted an offer from another company for a 2019 summer internship. On October 12, 2018, Plaintiff received an email from Victoria Burnhauser, Recruiting Operations Analyst for Defendant, with an attached offer letter for a 2019 summer internship at Defendant's Baton Rouge facility. On October 15, 2018, Plaintiff and Defendant agreed that Plaintiff could begin his internship in January 2019 so that he would not have to renege on his acceptance of the summer 2019 internship with the other company. Plaintiff declined the offer by another company for the spring 2019 internship, which would have paid Plaintiff a semi-monthly stipend of $1,993.00 and a housing allowance of $900.00 per month.

Defendant offered Plaintiff a starting salary of $83,000.00 and relocation benefits and noted that the "offer is contingent upon the verified, satisfactory completion of requirements outlined in the Conditions of Employment." This notation includes a link, which takes the user to a page on Defendant's website stating, "This employment offer is contingent upon satisfaction of [] requirements that we will verify upon your acceptance," including maintaining satisfactory academic performance and completion of a medical evaluation, drug test, and background check. The page also note that "the work eligibility requirements in the employment application include original documentation to support your status." The webpage continues, "When you accept our offer you will be asked to provide a legible copy of one of the following documents showing your status as a 'Protected Individual' as defined by federal law." The webpage requests documents establishing that an intern is a U.S. Citizen or National, Permanent Resident, Temporary Resident, Refugee, or Asylee.

Defendant required that Plaintiff complete a second application specifically for its Baton Rouge facility and on October 29, 2018, Plaintiff submitted the Baton Rouge application. On this

3

application, Plaintiff again marked that he was legally authorized to work, he was a citizen of Mexico, and he would not need future company sponsorship for a visa or work authorization. In or about November 2018, Defendant sent Plaintiff a $3,000 moving allowance.

On November 14, 2018, Burnhauser emailed Plaintiff to remind him to upload documents that would demonstrate his eligibility to work in the United States. On or about November 23, 2018, Plaintiff submitted copies of his work authorization document and social security card on Defendant's CareerConnect Portal. Plaintiff also sent an email to Defendant confirming that he had uploaded the required documents. On or about December 6, 2018, Latisha Thomas, a representative from Defendant's Baton Rouge Human Resources office, emailed Plaintiff to inform him that the "U.S. Department of Homeland Security has notified ExxonMobil that Transportation Worker Identification Credential (TWIC) cards are required to enter" the Baton Rouge Refinery and Baton Rouge Chemical Plant. The email included instructions how to complete the TWIC card application and indicated that Plaintiff's employment could begin upon completion of the requirements in the offer letter and receipt of the TWIC card.

Plaintiff promptly started completing the online application for a TWIC card. On realizing that his employment authorization document did not present itself as a valid option for TWIC eligibility, Plaintiff called a Human Resources representative at the Baton Rouge facility who instructed Plaintiff to change his response to the question, "Do you now or will you in the future require company sponsorship for a visa or employment authorization?" from "No" to "Yes." Plaintiff believes the representative advised him to make this change in hopes that it would facilitate Plaintiff's acquisition of a TWIC card, either through sponsorship by Defendant or otherwise. After making this change, Plaintiff resubmitted his application. The representative and Plaintiff did not discuss whether Plaintiff had temporary or permanent work authorization. On or

4

about December 26, 2018, Plaintiff received a call from a Human Resources representative informing him that Defendant was rescinding its internship offer.

On or about December 31, 2018, Plaintiff received a letter from Rosendo Cruz, Defendant's U.S. Recruiting Supervisor, stating Defendant's intent to rescind the internship offer. The letter stated in part, "As described in your offer letter, a prerequisite of employment for the position you are seeking is that you have the permanent or indefinite right to work in the U.S. (i.e. you are a protected individual under 8 USC 1324b – you are a US citizen, US National, US Permanent Resident, US Conditional Permanent Resident, Temporary Resident . . ., Asylee, or Refugee.)[.] We now understand based on your application modified after receiving our offer that you do not meet this eligibility requirement." Defendant did not offer Plaintiff an internship at a jobsite that did not require a TWIC card.

Due to the short window of time between the rescission letter and the start of his spring semester, Plaintiff was unable to obtain an internship to replace the internship that Defendant rescinded. Plaintiff had moved out of his college housing in anticipation of his move to Baton Rouge and hastily secured expensive short-term housing near campus. In or about September 2019, an ExxonMobil representative contacted Plaintiff to discuss a potential internship for the summer 2020. This representative informed Plaintiff the Defendant could place him at a location that did not require a TWIC card. Soon thereafter, Plaintiff spoke with a different ExxonMobil representative who provided him her personal email address for further discussions about potential internship opportunities. However, the representative called Plaintiff later to inform him that Defendant could not offer him an internship.

B. Procedural History

Based on these facts, Plaintiff filed the operative Complaint on December 24, 2020 alleging the Defendant violated Section 1981 by discriminating against him on the basis of his alienage. Plaintiff also alleges Defendant has discriminated against a class of protected persons on the same basis. Defendant responded to the Complaint by filing the present motion to dismiss arguing that (1) its policy is not discriminatory because it "does not classify individuals based on citizenship, but rather on immigration categories"; (2) the Immigration and Reform Control Act of 1986 controls this claim and does not prohibit Defendant's conduct; (3) the court should not extend the implied cause of action in § 1981 "to aliens who are not lawfully present or admitted to the country"; and (4) Plaintiff's allegations establish that Defendant's policy was not the "but for" cause of the offer's rescission.

Plaintiff counters that his allegations plausibly state he is a member of a protected class and Defendant's policy is facially discriminatory; his Section 1981 claim is not preempted by immigration laws; and Defendant's policy was the reason for its decision to rescind its internship offer to Plaintiff. Defendant replies that Plaintiff fails to rebut the "fact" that ExxonMobil rescinded its internship offer not because Plaintiff lacked U.S. citizenship, but because he lacked long-term work authorization, which does not constitute discrimination in violation of Section 1981.

II. **Legal Standards**

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556

6

Case 5:20-cv-00692-M   Document 26   Filed 09/28/21   Page 6 of 14

U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

### III. Analysis

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." In this country, Section 1981 prohibits intentional discrimination against persons

7

because of their alienage, or status as a noncitizen of this country. *See De Reyes v. Waples Mobile Home Park Ltd. P'ship*, 205 F. Supp. 3d 782, 795–96 (E.D. Va. 2016), *vacated and remanded on other grounds sub nom. Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415 (4th Cir. 2018) (citing *Duane v. GEICO*, 37 F.3d 1036, 1044 (4th Cir. 1994) ("[W]e conclude that section 1981 prohibits private discrimination against aliens[.]")). "To state a claim under § 1981, the Complaint must allege both (i) that defendants 'intended to discriminate' on the basis of citizenship and alienage and (ii) 'that the discrimination interfered with a contractual interest.'" *Id.* (citing *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)). "To prevail [on a Section 1981 claim], a plaintiff must initially plead and ultimately prove that, but for [his or her alienage, he or she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020).

No party disputes that Plaintiff bases his claim of discrimination on the fact that Defendant "denies employment to individuals who have temporary work authorization, including those who have acquired work authorization through the DACA (Deferred Action for Childhood Arrivals) policy." Compl. ¶ 1, DE 1. Defendant does not deny this fact and, for purposes of its analysis under Rule 12(b)(6), the court must accept it as true. With respect to the Plaintiff, the allegations reflect that he received a letter from Defendant stating, "As described in your offer letter, a prerequisite of employment for the position you are seeking is that you have the permanent or indefinite right to work in the U.S. . . . We now understand based on your application modified after receiving our offer that you do not meet this eligibility requirement." *Id.* at ¶ 27. Thus, as it is undisputed that Defendant knew the Plaintiff was a noncitizen and believed he had permanent work authorization when it recruited him for and offered him the internship, the only factor

8

motivating the Defendant to rescind its offer was its discovery that Plaintiff's authorization to work in this country was, in fact, temporary.

Plaintiff's arguments to the contrary, his status as an immigrant is not the same as his status as a noncitizen for purposes of determining whether unlawful discrimination has occurred.[1] *See De Reyes*, 205 F. Supp. 3d 782, 797 n.19 ("a person's alienage and citizenship are distinct from that person's immigration status"). If it were the same, Congress would not have created the Unfair Immigration-Related Employment Practices section of the Immigration Reform and Control Act of 1986 ("IRCA"), codified at 8 U.S.C. § 1324b, which generally prohibits discrimination with respect to an employer's failure to hire or recruit an individual, or its termination of an individual, because of the individual's national origin or, in the case of a "protected individual," his or her citizenship status. *Id.* at § 1324b(a)(1). Congress has defined an individual "protected" under the IRCA as a "citizen or national of the United States" or an "alien" who is (1) "lawfully admitted for permanent residence"; (2) "granted the status of an alien lawfully admitted for temporary residence"; (3) "admitted as a refugee"; or (4) "granted asylum" in accordance with the IRCA. *Id.* at § 1324b(a)(3). Thus, in this country, only aliens with certain types of immigration status are protected from employment discrimination.

Plaintiff asserts, ". . . courts recognize that Section 1981 controls employment alienage discrimination claims, not IRCA." Resp. at 11, DE 18. The cases Plaintiff cites, however, stand for no such proposition. In *Anderson v. Conboy*, 156 F.3d 167 (2d Cir. 1998), the court found that permitting claims for private alienage discrimination under Section 1981 would not conflict with 8 U.S.C. § 1324a, which prohibits an employer from hiring "unauthorized" aliens. *Id.* at 180. The

---

[1] Plaintiff does not dispute that an alien's "immigration status" includes the type of work authorization granted to the alien.

court did not address whether either statute "control[led] employment alienage claims" nor whether Section 1981 covered unlawfully present aliens and, if so, whether it would conflict with § 1324b. *See id.* Likewise, in *Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301 (S.D. Fla. 2020), the court did not find that Section 1981, as opposed to the IRCA, controls employment alienage claims. *Id.* at 1316, 1320. Rather, the court distinguished the defendant's reading of *Anderson*, finding that the portion of the opinion addressing the IRCA did not imply "a categorical exclusion of DACA recipients, who are required to possess work authorization, from Section 1981's protections." *Id.* at 1320.[2]

Defendant argues that by identifying particular categories of "aliens" under the IRCA's protection and omitting other classes of work-authorized aliens (such as aliens with F-1, J-1, or H-1B visas and DACA recipients), Congress has "draw[n] distinctions among the different classes of work-authorized aliens reveal[ing] that immigration status has a legal significance that is distinct from a person's general status as an alien." Mot. at 11. Based on this distinction, the Office of Special Counsel for Immigration-Related Unfair Employment Practices has informed employers that it is not unlawful to refuse to hire persons *not* protected under the statute "because of their real or perceived immigration or citizenship status or because of their type of work authorization." April 24, 2007 Letter, DE 15-1 at 2.[3] Underscoring this distinction is the fact that unprotected

---

[2] Notably, the *Rodriguez* court addressed a policy similar to that at issue here and found the policy to be facially discriminatory on the basis of alienage. *Id.* For the reasons set forth herein, this court respectfully disagrees.

[3] Having no objection from the Plaintiff as to the authenticity of the documents or accuracy of the information contained in the letters (*see* Resp. at 19 n.9), the court finds that it may take judicial notice of the letters and consider them in this analysis without converting the motion to a motion for summary judgment. *See Elguezabal v. GBG Properties Two LLC*, No. ED CV 18-01242-AB, 2020 WL 1079496, at *4 n.2 (C.D. Cal. Feb. 3, 2020) (taking judicial notice of a technical assistance letter executed by special legal counsel for the Office on ADA, Department of Justice) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities

10

persons, like Plaintiff, "*are* protected under the [statute's] prohibitions against national origin discrimination and document abuse." *Id.* (emphasis added).[4] The statute reflects that Congress has specifically excluded from the IRCA's protection against alienage discrimination (as opposed to national origin discrimination) those aliens who hold temporary visas or other non-permanent work authorizations, such as the Plaintiff. To construe Section 1981 as protecting *all* aliens in the United States, as Plaintiff suggests, would read the Unfair Immigration-Related Employment Practices section of the IRCA out of existence. *See United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940) ("In the interpretation of statutes, the function of the courts is . . . to construe the language so as to give effect to the intent of Congress."); *see also U.S. Army Eng'r Ctr. v. Fed. Lab. Rels. Auth.*, 762 F.2d 409, 412-13 (4th Cir. 1985) ("Our duty is to 'give effect to the intent of Congress,' which we must first seek in the 'plain language' of the statute, giving the words their 'ordinary meaning.'") (citing *Am. Trucking Ass'ns*, 310 U.S. at 542 and *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)).

In accordance with the Supreme Court's opinion in *Comcast*, the Plaintiff here must allege that Defendant rescinded the internship offer because of Plaintiff's status as a noncitizen. *See Comcast*, 140 S. Ct. at 1019 ("To prevail, a plaintiff [alleging a Section 1981 claim] must initially plead and ultimately prove that, but for [alienage], it would not have suffered the loss of a legally protected right.").[5] Plaintiff has the burden to show that *alienage* caused the adverse decision, but

---

..., and neither party disputes the authenticity of the websites or the accuracy of the information displayed therein); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that courts ruling on 12(b)(6) motions to dismiss may take into consideration "matters of which a court may take judicial notice").

[4] *See also* June 15, 2016 Technical Assistance Letter *and* September 6, 2013 Technical Assistance Letter, https://www.justice.gov/crt/technical-assistance-letters (same). These letters were issued *after* the June 15, 2012 DACA Memorandum.

[5] The Supreme Court notes that the term "because of" is "often associated with but-for causation." *Id.* at 1016. In fact, the Court concluded, "If a § 1982 plaintiff must show the defendant's

11

this he has not done. The allegations, taken as true, reflect that Defendant recruited Plaintiff and offered him a paid internship *knowing* Plaintiff was not a United States citizen; it was only *after* Defendant learned Plaintiff possessed temporary (as opposed to permanent) work authorization[6] that Defendant rescinded the offer. According to the Supreme Court, it is not enough to show that "[alienage] played 'some role' in the defendant's decisionmaking process." *See Jones v. Lowe's Companies, Inc.*, 845 F. App'x 205, 215 (4th Cir. 2021) (quoting *Comcast*, 140 S. Ct. at 1013). In analyzing a Section 1981 claim, the Fourth Circuit has emphasized that "[t]he federal civil rights laws make it unlawful to promote a white person over a black person *because* of race." *Id.* In the same vein, Plaintiff must allege that Defendant rescinded the internship offer because he was not a United States citizen. *See Comcast*, 140 S. Ct. at 1015 (courts should ask, "what would have happened if the plaintiff had been [a U.S. citizen]?"); *see also Jones*, 845 F. App'x at 215 (rejecting Section 1981 claim because plaintiff's theory and evidence demonstrated a similarly situated candidate was favored because of his longstanding relationship with the company president, not because of race); *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 173 (4th Cir. 2020), as

---

challenged conduct was 'because of' race, it is unclear how we might demand less from a § 1981 plaintiff." *Id.* at 1017. It is true that but for Plaintiff's alienage, Defendant would not have rescinded the internship offer (because, as Plaintiff asserts, only aliens in this country possess temporary authority to work). However, this court will not conflate the analytically distinct concepts of "but for" and "because of," notwithstanding Plaintiff's invitation to do so. It is also true that but for the fact that Plaintiff was human, Defendant would not have rescinded the internship offer since, of course, only humans can be offered and denied employment. Alienage may be a necessary condition to place Plaintiff in the category of those requiring work authorization, but it is not sufficient under the circumstances presented here to demonstrate illegal discrimination. Instead, Plaintiff must allege that his status as a noncitizen was the cause of Defendant's adverse decision; in other words, that Defendant rescinded the job offer *because* Plaintiff is not a United States citizen.

[6] Plaintiff's temporary work authorization also prohibited Plaintiff from obtaining a "TWIC" (Transportation Worker Identification Credentials) card from the Department of Homeland Security, which was necessary for entrance into Defendant's Baton Rouge facility. No party disputes that DACA recipients, like the Plaintiff, are ineligible to receive a TWIC card.

12

amended (Oct. 16, 2020) (dismissing failure-to-promote claim for plaintiff's failure to allege facts rendering it plausible that but for her complaints of race discrimination she was not promoted). Plaintiff does not, and cannot (taking the allegations as true), allege that Defendant decided to rescind its internship offer because he is not a United States citizen. Therefore, his Section 1981 claim is not plausible under *Iqbal* and *Twombly*.

Plaintiff asserts that others similarly situated to him are protected from alienage discrimination under Section 1981. Specifically, Plaintiff alleges that a class exists consisting of "noncitizens who are within the jurisdiction of the United States and authorized to work in the United States, who were denied employment or internships with Defendant ExxonMobil, or who were deterred from applying, under the company's policies and/or practices on the basis of alienage." Compl. at ¶ 34. Construing such noncitizens as similarly situated to Plaintiff, the purported class representative, the court interprets the allegations as describing a class of noncitizens who were denied employment or internships with Defendant, or who were deterred from applying, based on the company's refusal to hire individuals with temporary authority to work in this country. *See Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 99 (4th Cir. 2011) ("Generally, a class representative not only has a 'personal stake' in the substantive claim he or she asserts, but also a distinct procedural right to represent the interests of similarly situated individuals.") (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980)); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'") (citations omitted). For the same reasons set forth herein, the court finds the class allegations fail to state a plausible claim for alienage discrimination in violation of 42 U.S.C. § 1981.

## IV. Conclusion

In sum, taking as true Plaintiff's allegations that Defendant knew he was a noncitizen and believed he had permanent work authorization when it recruited and offered Plaintiff an internship, then rescinded the offer when Defendant learned Plaintiff's work authorization was temporary, the court finds Plaintiff fails to allege a plausible claim for alienage discrimination under 42 U.S.C. § 1981. In addition, to the extent that "on the basis of alienage" in the class allegations means—as it does with the Plaintiff—on the basis of temporary work authorization, the class allegations fail to state a plausible claim for alienage discrimination under Section 1981. Therefore, Defendant's motion to dismiss Plaintiff's Class Action Complaint [DE14] is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Defendant and close this case.

SO ORDERED this 28th day of September, 2021.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE